```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ALABAMA
                         SOUTHERN DIVISION
```

DRAYTON LESTER,                }
                               }
      Plaintiff,               }
                               }
   vs.                         }    CIVIL ACTION NO.
                               }
                               }    96-AR-0812-S
COMPASS BANK, et al.,          }
                               }
      Defendants.              }

**MEMORANDUM OPINION**

The court has before it the motions for summary judgment filed by defendants, Compass Bank ("Compass") and Security Engineers, Inc. ("SEI"). Plaintiff, Drayton Lester ("Lester"), alleges that Compass and SEI violated Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("the ADA"), by discriminating against him based on his "association" with a disabled individual, and that Compass violated Title III of the ADA by failing to make a "place of public accommodation" accessible to disabled individuals. In addition, this court discerns that, in light of the low standard of specificity required by notice pleading, plaintiff also alleges that Compass and SEI violated Title V of the ADA, 42 U.S.C. § 12203, by terminating him in response to his having aided and encouraged a

disabled individual.[1]  Because no genuine issues of material fact exist with regard to Lester's claims under Title I and III of the ADA this court determines that summary disposition under Rule 56 is appropriate.  Because Lester's claim under Title V of the ADA was not clearly before the parties and therefore not addressed in defendants' Rule 56 motions,[2] parties shall be given leave to file additional dispositive motions on the limited issue of Lester's Title V claim if they so desire.

Finally, Compass alleges in its counterclaim that Lester committed the tort of conversion.  Because genuine issues of material fact exist with regard to Compass' conversion claim, Compass' motion for summary judgment will be denied with respect to that claim.

### I. Pertinent and Undisputed Facts

Lester was an employee of SEI from January 1995, up and until he was discharged on or about May 26, 1995.  SEI provides security personnel to work at Compass.  Compass is SEI's second

---

[1] Due to the extremely low specificity standard required by notice pleading, and because none of the parties, save Compass in its Reply Brief, have addressed 42 U.S.C. § 12203 as a separate and distinct cause of action, this court did not, until this time, unearth this fourth cause of action.

[2] Compass thoroughly addresses Lester's Title V claim in its reply brief. However, Compass did not file a motion for summary judgment with respect to the Title V claim, presumably because it understandably believed that it was not pled in Lester's complaint.  Because this court cannot raise a Rule 56 motion sua sponte, it cannot rule on Compass' argument with respect to Lester's Title V claim.

2

largest client.

Lester was hired specifically for the position of project manager at Compass. Before Lester was hired he interviewed and/or spoke with Bill Colvert ("Colvert"), Personnel Manager of SEI, Don Bottom ("Bottom"), CEO of SEI, Tom Greene ("Greene"), Vice-President and Director of Corporate Security for Compass, and Steve Sayers ("Sayers"), Protection Officer of Corporate Security at the Administrative Services Building of Compass. Lester was the first project manager hired for Compass. Prior to Lester's hiring, two security captains at Compass employed by SEI handled the job duties.

Lester's duties at Compass included the following: coordinating the efforts of two captains assigned to Compass, supervising work schedules of security guards at Compass, and the hiring, firing and training of all security guards at the Compass facilities. Sayers, Greene and Kevin Kuykendall ("Kuykendall"), employees of Compass, helped manage the security at Compass and were Lester's contacts at Compass. Lester received instructions from the Compass employees and was to keep them apprised of all new developments.

Lester filled out a W-2 and personnel forms with SEI, and likewise, he was paid by SEI, not Compass. Furthermore, Lester never received Compass's employee handbook nor any benefits from

3

Compass. Lester was given training and directions from his contacts at Compass. In addition, Greene, VP of Compass, directed Sayers to send Lester a letter on May 4, 1995, detailing Compass' problems with the security operations. The problems included, among other things: deficiencies in the staffing and training of the security officers assigned to Compass, high turnover and low moral of security officers at Compass, lack of direct supervision of security guards, security guard appearance, performance, demeanor and punctuality; and the decline in the care of the vehicles and security guard posts. The letter stated that Compass may restructure its security guard force to include the elimination of the project manager position.

In Spring 1995, SEI ran an ad for a console operator position with its Compass account. Within a week after the May 4, 1995, letter to Lester detailing problems at Compass, John Benefield ("Benefield") applied for the position. Benefield is missing one leg and therefore, classified as disabled under the ADA. Initially, Colvert, of SEI, interviewed Benefield for the position. Thereafter, Colvert informed Lester that he thought Benefield was qualified for the console position and asked Lester to interview him. Lester recommended that Benefield be hired for the console position. Lester met with Randy Davis ("Davis") from Compass' Human Resources Department to see if Compass would hire

4

Benefield. Benefield has never directly applied for a position with or been hired by Compass.

SEI hired Benefield as a dispatcher at SEI's corporate headquarters on or about May 17, 1995. Benefield accepted and is currently working there. The dispatcher position pays more than the console position at Compass.

On or about May 15, 1995, Greene and Sayers met with Lester to discuss the fact that Lester went around his chain of command in recommending Benefield directly to human resources. On or about May 26, 1995, Lester was discharged from his position with SEI and Compass, even though he had corrected many, if not all, of the numerous problems cited by Compass in the May 4, 1995, letter to Lester. Lester was not reassigned to any other position within SEI. No one was hired for the project manager position at Compass until February 1996. Compass disputes this fact. However, for purposes of this motion the court will view the evidence in the light most favorable to the non-movant, Lester, and therefore, will assume that someone was hired to fill this position in February 1996.

While Lester worked at Compass he worked on and produced payroll and other reports. Some of these reports were produced at home on his laptop computer from payroll and other data he had downloaded to disk while at Compass' facilities. Lester made

5

numerous copies of these disks. He acquired the information for the reports while employed by Compass and has retained possession of the originals since his termination.

## II. Analysis

### A. Rule 56

Rule 56 states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). The obvious was stated by the Eleventh Circuit as follows: "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." <u>Turnes v. AmSouth Bank, N.A.</u>, 36 F.3d 1057, 1061 (11th Cir. 1994). Compass and SEI have invoked Rule 56.

### B. Title I - Association Claim

Without addressing whether Compass or SEI or both employed Lester, this court moves to address Lester's allegation that both defendants violated 42 U.S.C. § 12112(b)(4) by discharging him from his position of project manager of security at Compass. 42 U.S.C. § 12112(b)(4) provides that it shall be discriminatory to:

> exclude[] or otherwise deny[] equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship <u>or association</u>.

6

(emphasis added). In order for Lester to establish his prima facie case of "association discrimination" he must prove the following: (1) that he was in a protected class;³ (2) that he was qualified for the position; and (3) that an adverse employment action was taken against him because of his association.⁴ *See Saladin v. Turner*, 936 F. Supp. 1571, 1581 (N.D. Okla. 1996).

The interpretive guidelines provide that the ADA association provision is aimed at preventing unfounded stereotypes and assumptions about employees who associate with disabled people. While the EEOC guidelines do not definitively identify the parameters of an association, they provide informative and helpful guidance. *See Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 760-61 (5th Cir. 1996). For instance, an employer or prospective employer cannot make an adverse

---

³This court is perplexed by Compass' argument with respect to whether Lester has to be disabled in order to assert a claim for "association discrimination." In its brief in support of its motion for summary judgment Compass cites 29 C.F.R. § 1630, App. at 349 as stating that "a qualified applicant without a disability" can bring a "association discrimination" claim. However, in its reply brief Compass changes its tune. It states that Lester must be "a qualified individual with a disability" in order to bring such a claim. This court recognizes Compass' strict statutory interpretation of 42 U.S.C. § 12112(a) & (b)(4). If the court followed that rationale then under "association discrimination" only disabled individuals who associated with disabled individuals could bring such a claim. This court could not locate any legal authority to support Compass' new found and supposedly stronger argument. Furthermore, Compass cites no legal authority, for its neat little change of heart. Creative thinking is to be encouraged. However, this court does not have to don its thinking cap to see when the wool is being pulled over its eyes. This court admonishes Compass to be consistent. It cannot have it both ways.

⁴Lester does not allege that he had a relationship with Benefield.

employment decision based on a belief that a spouse "would have to miss work or frequently leave work early in order to care for a [disabled] spouse" or because an "employee does volunteer work with people who have AIDS, and the employer fears that the employee may contract the disease." 29 C.F.R. § 1630, App. at 412 (1996); see also *Tyndall v. National Educ. Centers Inc. of California*, 31 F.3d 209, 214 (4th Cir. 1994); *Braverman v. Penobscot Shoe Co.*, 859 F. Supp. 596, 604 (D.Me. 1994).

In order for Lester to be in the protected class, he must demonstrate that he had an association with a disabled person. While the association provision of the ADA is not limited to familial relationships, 29 C.F.R. § 1630, App. at 412 (1996), it is clear to this court that Lester has not and cannot demonstrate that he is a member of the protected class. He met Benefield, the disabled applicant, one time before Lester was discharged. The interpretive guidelines illustrate that a one-time chance meeting does not equate with an association. Accordingly, Lester has failed to establish that he has an association with Benefield, a man who states that he "does not consider [Lester] to be a close personal friend." (Benefield Aff. at 2).

Even if this court determined that Lester had and/or has an association with Benefield, this court would still find that Lester has failed to establish a claim of "association

8

discrimination." Lester must demonstrate not only that he had an association with a disabled person and that he himself was qualified for the position, but also that he was fired because of his association with the disabled individual. Lester has failed to demonstrate any causal connection between his termination and his alleged association with Benefield.

Lester does not assert that he was terminated because he associated with or befriended Benefield. Instead, he asserts that he was terminated because he "championed the cause of Benefield, an amputee who Lester believed to be ideally suited for a security console monitor position." (Lester's Response Brief to Compass' Motion for Summary Judgment at 3). An individual who champions the cause of a disabled individual in the exercise of the disabled's rights protected by the ADA is most assuredly protected from reprisal or retaliation because of his acts. However, the protection is provided by 42 U.S.C. § 12203(a)-(c), the prohibition against retaliation or coercion. 42 U.S.C. § 12203 provides protection for individuals who "aid[] or encourage[]" individuals in the exercise and enjoyment of the rights protected by the ADA. Lester has failed to establish that he was terminated because of his alleged association with Benefield. Thus, Compass' and SEI's motions for summary judgment

9

are due to be granted with regard to Lester's Title I claim.[5]

### C. Title III - Public Accommodation

This court now turns to address Lester's argument that Compass violated Title III of the ADA by failing to provide access to the security console to Benefield. In order to establish his prima facie case under Title III of the ADA, 42 U.S.C. § 12182, Lester must prove: (1) that he is disabled; (2) that Compass is a private entity which operates a public place of accommodation; and (3) that he was denied the opportunity to participate in or benefit from services or accommodations on the basis of his disability. See *Shultz v. Hemet Youth Pony League, Inc.*, 943 F. Supp. 1222, 1225 (C.D. Cal. 1996).[6] Lester clearly cannot establish elements one and three of his Title III claim.

Lester states in his complaint that he "is not a person with a disability" and in his deposition testimony that he does not consider himself to be disabled. (Lester Compl. at ¶ 8). Lester has subsequently, submitted to this court an affidavit asserting that even though he does not consider himself disabled, he really is because the United States Department of Veterans Affairs has

---

[5] This court does not address Lester's cause of action under 42 U.S.C. § 12203 because there is not a motion for summary judgment with respect to 42 U.S.C. § 12203 properly before the court.

[6] This court would like to inform counsel that *Johnson v. Florida High School Activities Ass'n*, 899 F. Supp. 579 (M.D. Fla. 1995), cited indirectly by Compass has been vacated. See *Johnson v. Florida High School Activities Ass'n*, 102 F.3d 1172 (11th Cir. January 6, 1997).

classified him as having a service classified disability. However, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously clear testimony." *Van T. Junkins and Assoc. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984). Consequently, Lester fails to establish the initial element of his prima facie case.

Even assuming that Lester can established that he is disabled, even though he does not consider himself disabled, and that the console monitor position is a public accommodation, he still fails to establish his prima face case under Title III. To establish the third element of his prima facie claim he must demonstrate that he was denied the benefit of the console based on his disability. Lester does not argue or even make a conclusory allegation that he was denied the benefit of the console. Accordingly, Compass' Rule 56 motion is due to be granted with regard to Lester's Title III claim.

### d. Compass' Counterclaim

Compass alleges in its counterclaim that Lester committed the tort of conversion by taking proprietary information from Compass. However, Lester asserts and produces evidence that he has a proprietary interested in the property. Accordingly, it is

11

clear to the court that there exists genuine issues of material fact with regard to Compass' conversion claim. Therefore, Compass' Rule 56 motion with regard to its counterclaim is due to be denied.

### III. Conclusion

Because no genuine issues of material fact exist with respect to Lester's Title I and Title III ADA claims, Compass and SEI are entitled to a judgment as a matter of law, and their respective Rule 56 motions as to those claims are due to be granted. However, because genuine issues of material fact exist with respect to Compass' conversion claim, Compass' Rule 56 motion as to that claim is due to be denied. Further, because the parties, including Lester, were not aware of the Title V ADA claim of retaliation asserted by Lester and because this court has not considered said claim, this court will grant leave for all parties to file additional dispositive motions on the limited issue of Lester's Title V ADA claim if they so desire. A separate and appropriate order will be so entered.

DONE this 10th day of February, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT